## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| CLOUD PEAK ENERGY INC., *et al.*, | ) | Case No. 19 – 11047 (KG) |
|  | ) |  |
| Debtors. [1] | ) | (Joint Administration Requested) |
|  | ) |  |

**MOTION OF DEBTORS FOR ENTRY OF ORDERS (A)(I) APPROVING BIDDING PROCEDURES, (II) SCHEDULING THE BID DEADLINES AND THE AUCTION, (III) SCHEDULING HEARINGS AND OBJECTION DEADLINES WITH RESPECT TO THE SALE, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VI) GRANTING RELATED RELIEF AND (B)(I) APPROVING THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), file this *Motion of Debtors for Entry of Orders (A)(I) Approving Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief and (B)(I) approving the Sale of the Assets Free and Clear of All Liens, Claims, and*

---

[1]    The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:   Antelope Coal LLC (8952); Arrowhead I LLC (3024); Arrowhead II LLC (2098); Arrowhead III LLC (9696); Big Metal Coal Co. LLC (0200); Caballo Rojo LLC (9409); Caballo Rojo Holdings LLC (4824); Cloud Peak Energy Finance Corp. (4674); Cloud Peak Energy Inc. (8162); Cloud Peak Energy Logistics LLC (7973); Cloud Peak Energy Logistics I LLC (3370); Cloud Peak Energy Resources LLC (3917); Cloud Peak Energy Services Company (9797); Cordero Mining LLC (6991); Cordero Mining Holdings LLC (4837); Cordero Oil and Gas LLC (5726); Kennecott Coal Sales LLC (0466); NERCO LLC (3907); NERCO Coal LLC (7859); NERCO Coal Sales LLC (7134); Prospect Land and Development LLC (6404); Resource Development LLC (7027); Sequatchie Valley Coal Corporation (9113); Spring Creek Coal LLC (8948); Western Minerals LLC (3201); Youngs Creek Holdings I LLC (3481); Youngs Creek Holdings II LLC (9722); Youngs Creek Mining Company, LLC (5734).   The location of the Debtors' service address is:  385 Interlocken Crescent, Suite 400, Broomfield, Colorado 80021.

*Encumbrances, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "***Motion***"), and in support respectfully submit the following:

## PRELIMINARY STATEMENT

1.      The Debtors filed these chapter 11 cases in order to continue their robust and value-maximizing sales and marketing process for substantially all of their assets.  The Debtors submit that approval of the proposed bidding procedures and sale schedule will best facilitate this process and optimize recoveries for all of their stakeholders.

2.      Prior to the Petition Date, the Debtors, with the assistance of their restructuring advisors, carefully evaluated current industry conditions, recent business performance, and resultant liquidity constraints.  In light of these realities, and after analyzing available transaction and restructuring alternatives, the Debtors, in consultation with their restructuring advisors, and the Ad Hoc Group of Second Lien Noteholder (the "***Ad Hoc Group***") determined that a sales and marketing process presented the best path forward for all of their stakeholders.[2]  Thus, in early March 2019, the Debtors' proposed investment banker, Centerview Partners LLC ("***Centerview***"), at the Debtors' request, began contacting potential bidders.  Several of these parties executed confidentiality agreements with the Debtors and are currently conducting the diligence necessary to analyze their potential interest in bidding on some or all of the Debtors' assets.

3.      The proposed bidding procedures and sale schedule will build on this prepetition momentum and facilitate an open, orderly, and efficient process for the solicitation and evaluation of bids during these chapter 11 cases.  Importantly, the proposed bidding procedures

---

[2]      The Ad Hoc Group will continue to evaluate standalone restructuring options on a parallel path in accordance with the Debtors' marketing and sale process.

US 6228456

allow for substantial flexibility in the structure of potential bids, thereby ensuring the Debtors, in consultation with the Ad Hoc Group and any official committee of unsecured creditors formed in these chapter 11 cases, will be best positioned to achieve the optimal results for their stakeholders. To further increase the competitiveness of the bidding process, the Debtors seek authority to select one or more parties to act as a stalking horse bidder and to provide any such stalking horse bidder with bid protections in the form of a break-up fee and/or expense reimbursement, in an aggregate amount not to exceed 3% of the proposed purchase price of the sale.

4. While the bidding procedures are designed to attract as many parties to the sale process as possible, the Debtors and their advisors believe they have already identified, contacted, and engaged the universe of viable potential buyers for the Debtors' assets through the Debtors' extensive prepetition sale and marketing efforts. Thus, a prolonged marketing period is not necessary under the circumstances. In addition, the Debtors recognize that time is of the essence, based on the Debtors' projected liquidity profile, including the anticipated cash burn associated with the administrative costs of the chapter 11 cases. Finally, based on the nature of the Debtors' businesses, the Debtors believe the process to close any potential sale may require up to 60 days. Thus, the Debtors submit that the sales process timeline is necessary and sufficient to foster a swift and competitive bidding process, while also ensuring that the Debtors meet their ongoing business obligations and agreed milestones under the SAPSA and the Debtors' proposed debtor-in-possession financing facility.

5. The proposed bidding procedures and sale schedule are critical to achieving the Debtors' paramount goal of maximizing the value of their estates for the benefit of their stakeholders. Importantly, the lenders under the Debtors' proposed debtor-in-possession

3

financing facility and, through the SAPSA, the Ad Hoc Group, and the holders of more than 50% in principal amount of the Debtors' unsecured notes due 2024, support the sales and marketing process, including the proposed bidding procedures and sale schedule.  Accordingly, the Debtors respectfully request that the Court enter the Bidding Procedures Order.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the District of Delaware (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), to the entry of an order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory bases for the relief requested herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Local Rule 6004-1.

## BACKGROUND

9.      Cloud Peak Energy Inc. ("***Cloud Peak***") owns and operates three surface coal mines in the Powder River Basin, the lowest cost major coal producing region in the United

4

States.   As one of the safest coal producers in the nation, Cloud Peak mines low sulfur, subbituminous coal and provides logistics supply services domestically and abroad.

10.     On May 10, 2019 (the "***Petition Date***"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   As of the date hereof, no request for the appointment of a trustee or examiner has been made and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

11.     Additional information regarding the Debtors and these chapter 11 cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these chapter 11 cases, is set forth in the *Declaration of Heath Hill in Support of Chapter 11 Petitions and First Day Pleadings* (the "***First Day Declaration***"), filed contemporaneously herewith and incorporated herein by reference.[3]

## RELIEF REQUESTED

12.     The Debtors (a) seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Bidding Procedures Order***"):   (i) authorizing and approving the proposed bidding procedures (the "***Bidding Procedures***") attached to the Bidding Procedures Order as **Exhibit 1**, including the form of asset purchase agreement attached thereto (the "***Form of Asset Purchase Agreement***") in connection with one or more sales (each a "***Sale***") of all, substantially all, or any combination of the Debtors' assets (collectively, the "***Assets***") free and clear of all claims, liens, and encumbrances; (ii) scheduling an auction in connection with the Sale (the "***Auction***"), hearing dates in connection with approval of the Sale (the "***Sale Hearing***"), and the

---

[3]     Capitalized terms used but not otherwise defined in this Motion shall have the meaning set forth in the First Day Declaration.

objection deadline for the Sale Hearing; (iii) approving the form and manner of notice of the Auction and Sale, attached to the Bidding Procedures Order as **Exhibit 2** (the "*Auction and Sale Notice*"); (iv) approving procedures (the "*Assumption and Assignment Procedures*") for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "*Assigned Contracts*"), and approving the form and manner of notice thereof, attached as **Exhibit 3** to the Bidding Procedures Order (the "*Cure Notice*"); and (v) granting related relief, and (b) seek entry of an order (the "*Sale Order*"), (i) authorizing the Sale to the Winning Bidder free and clear of all liens, claims, interests and encumbrances, (ii) authorizing the assumption and assignment of the Assigned Contracts, and (iii) granting related relief.

## THE PROPOSED BIDDING PROCEDURES AND SALE SCHEDULE

### A.    The Bidding Procedures

13.    The following table describes the salient points of the Bidding Procedures and discloses certain information required pursuant to Local Rule 6004-1.

| i.    Participation Requirements | |
|---|---|
| a.  **Confidentiality Agreement and Evidence of Financial Capacity** | To receive due diligence information, including full access to the Debtors' electronic data room and additional non-public information regarding the Debtors, a party potentially interested in bidding on the Assets must deliver an executed Confidentiality Agreement on terms acceptable to the Debtors, to the extent not already executed, to each of:  (i) the Debtors, c/o Cloud Peak Energy Inc., 385 Interlocken Crescent, Suite 400, Broomfield, Colorado 80021, Attn: General Counsel; (ii) proposed counsel to the Debtors, (a) Vinson & Elkins LLP, 666 Fifth Avenue, 26th Floor, New York, New York 10103, Attn: David S. Meyer (dmeyer@velaw.com) and 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201, Attn: Paul E. Heath (pheath@velaw.com) and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, DE 19801, Attn: Daniel J. DeFranceschi; and (iii) proposed investment banker for the Debtors, Centerview Partners LLC, 31 West 52nd Street, 22nd Floor, New York, New York, 10019, Attn: Marc D. Puntus (mpuntus@centerview.com) and Ryan T. Kielty (rkielty@centerview.com) (collectively, the "***Debtor Notice Parties***"). |

| | | |
|---|---|---|
| **b. Electronic Data Room and Due Diligence** | | After a party delivers the executed Confidentiality Agreement in accordance with the Bidding Procedures, the Debtors shall provide such party with access to an electronic data room and due diligence information, as reasonably requested by such party, and the Debtors shall post substantially all written due diligence provided to any such party to the Debtors' electronic data room.  All due diligence requests must be directed to Centerview.  To the extent necessary and reasonably practicable, Centerview will also facilitate meetings between any such party and the Debtors' other restructuring advisors and management team.  The Debtors and their advisors will coordinate all reasonable requests from such parties for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to any party who, at such time and in the Debtors' reasonable business judgment, in consultation with the Ad Hoc Group, the lender parties under the Debtors' proposed debtor-in-possession financing facility (the "***DIP Lenders***"), and any official committee of unsecured creditors appointed in these chapter 11 cases (collectively, the "***Consultation Parties***"), has not established that it intends in good faith to, or has the capacity to, consummate a Sale.  Parties which enter into Confidentiality Agreements with the Debtors will not, directly or indirectly, contact or initiate, or engage in discussions with respect to matters relating to the Debtors or a potential transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors.  The due diligence period will end on the Bid Deadline (as defined below), and, after the Bid Deadline, the Debtors will have no obligation to furnish or update any due diligence information.  For any party that the Debtors, in consultation with the Consultation Parties, determine to be a competitor of the Debtors or affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold or modify, or to delay providing, any due diligence information that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such party at such time. |

| | |
|---|---|
| **ii.** | **Non-Binding Indications of Interest** |

In order to be eligible to be selected as a Stalking Horse Bidder or to be eligible to submit a Bid (each as defined below), a party must submit a non-binding indication of interest (an "***Indication of Interest***") in writing to the Debtor Notice Parties before 5:00 p.m. (prevailing Eastern Time) on such date that is the later of (x) June 5, 2019 or (y) one calendar day after the date on which the Court enters the Bidding Procedures Order (which deadline may be extended by the Debtors without notice or hearing before the Court); *provided*, *however*, that the Debtors reserve their right to waive the requirement for Eligible Bidders to submit an Indication of Interest for any party in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, without further order from the Court.  The Indication of Interest must:  (i) identify the interested party, including details on the acquisition structure, ownership structure, as well as legal form and jurisdiction of the interested party; (ii) identify with reasonable specificity the Assets the party is interested in acquiring; (iii) set forth a proposed purchase price for the proposed Sale, including by identifying any cash and non-cash components of the proposed Sale consideration, including, for example, any liabilities to be assumed; (iv) provide detailed information regarding the proposed financing sources; (v) outline the remaining due diligence requirements; (vi) identify any proposed conditions to closing the Sale, including, but not limited to, required approvals; (vii) provide for the party's ability to take transfer of the permits of the relevant mining operations; and (viii) provide evidence of such interested party's financial capacity to close a proposed Sale, which may include financial statements of, or verified financial commitments obtained by, such party (with the assistance of their advisors).

The submission of an Indication of Interest by a party does not (i) obligate such party to submit a Bid or to participate in the sale process, or (ii) exempt such party from also having to submit a Bid by the Bid Deadline to participate in the Auction.

| | |
|---|---|
| **iii.** | **Selecting a Stalking Horse Bidder and Bid Protections** |

| | |
|---|---|
| **a. Selecting a Stalking Horse Bidder** | The Debtors may, at any time until two calendar days prior to the date of the Auction, as an exercise of their reasonable business judgment, in consultation with |

|  | the Consultation Parties, select one or more parties that have submitted an Indication of Interest to act as a stalking horse bidder (the "***Stalking Horse Bidder***," and the Bid of such Stalking Horse Bidder, the "***Stalking Horse Bid***") with respect to some or all of the Debtors' Assets and provide such Stalking Horse Bidder with the Bid Protections (as defined below). |
|---|---|
| **b.  Bid Protections** | In connection with any stalking horse agreement with a Stalking Horse Bidder and as approved by the Bid Procedures Order, the Debtors shall be authorized (but not obligated), in an exercise of their reasonable business judgment, in consultation with the Consultation Parties, to (i) provide a breakup fee and (ii) agree to reimburse the reasonable and documented out-of-pocket fees and expenses of such Stalking Horse Bidder (collectively, the "***Bid Protections***"). The aggregate amount that may be paid to a Stalking Horse Bidder on account of the Bid Protections shall not exceed three percent of such Stalking Horse Bidder's proposed Purchase Price. |

| **iv.    Bid Deadline** |
|---|

Each party that timely submits an Indication of Interest shall be an "***Eligible Bidder***." Any Eligible Bidder that desires to make a binding proposal, solicitation, or offer (each, a "***Bid***") shall transmit the Bid to the Debtor Notice Parties so as to be **actually received** on or before June 21, 2019, at 5:00 p.m. (prevailing Eastern Time) (the "***Bid Deadline***").

| **v.    Bid Requirements (Local Bankr. R. 6004-1(c)(i)(A), (B))** |
|---|

All Bids must be submitted in writing and satisfy the following requirements (collectively, the "***Bid Requirements***"):

| **a.  Purchase Price** | Each Bid must clearly set forth the purchase price to be paid, specifying (i) any cash and (ii) any non-cash components, in sufficient detail satisfactory to the Debtors, in consultation with the Consultation Parties (the "***Purchase Price***"). Each Bid for a combination of Assets, other than for all or substantially all of the Assets, must:  (x) provide a breakdown of the share of the Purchase Price allocable to each of the Assets included in the Bid; (y) state whether the Bid is conditioned upon the Bid being the Winning Bid (as defined below) for any of the other Assets included in the Bid (and, if so, which Assets); and (z) state whether the Eligible Bidder is willing to purchase any of the Assets included in the Bid individually, and if so, the price such Eligible Bidder would pay for each such Asset. |
|---|---|
| **b.  Deposit** | Each Bid must be accompanied by a cash deposit in an amount equal to the greater of (i) 10% of the cash portion of the Purchase Price (i.e., the aggregate value of the cash and non-cash consideration) and (ii) $5,000,000.00 (the "***Deposit***"), to be submitted by wire transfer to an escrow account to be identified and established by the Debtors. |
| **c.  Marked Asset Purchase Agreement** | Each Bid must include a draft asset purchase agreement substantially in the form of the Form of Asset Purchase Agreement annexed to the Bidding Procedures as **Exhibit I**, or such other form as may be acceptable to the Debtors in consultation with the Consultation Parties (together with a redline version against the Form of Asset Purchase Agreement), including the exhibits and schedules related thereto and any related documents or other material documents necessary to consummate the Sale contemplated by the Bid (collectively, the "***Sale Documents***"). |
| **d.  Committed Financing** | Each Bid must contain evidence of the Eligible Bidder's ability to consummate a Sale within 60 calendar days of such Bid being declared the Winning Bid. To the extent that a Bid is not accompanied by evidence of such party's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include committed financing, documented to the Debtors' satisfaction, in consultation with |

|  | | the Consultation Parties, that demonstrates that such party has received sufficient debt and/or equity funding commitments to satisfy the Bid's Purchase Price and other obligations thereunder.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors, in consultation with the Consultation Parties. |
| e. | No Financing or Diligence Outs | A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions. |
| f. | Identity | Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Eligible Bidder if such Eligible Bidder is an entity formed for the purpose of consummating the proposed Sale contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid. |
| g. | Authorization | Each Bid must contain evidence that the Eligible Bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Sale contemplated in such Bid. |
| h. | Adequate Assurance of Future Performance | Each Bid must:  (i) identify any executory contracts and unexpired leases to be assumed and assigned in connection with such Bid; (ii) provide for the payment by the Eligible Bidder of all cure costs related to such executory contracts and unexpired leases; and (iii) demonstrate, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, that the Eligible Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases. |
| i. | Government Approvals | Each Bid must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the proposed Sale, together with evidence satisfactory to the Debtors, in consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, obtaining any such consents or approvals. |
| j. | Government Approvals Timeframe | Each Bid must set forth an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale. |
| k. | Transfer of Mining Permits/Assumption of Reclamation Obligations | Each Bid must (i) provide that the Eligible Bidder will: (a) take transfer of or obtain permits for the mining operations to be acquired, (b) assume all associated reclamation obligations with respect to the mines subject to the Bid, and (c) obtain assignment of or replace the reclamation surety bonds associated with such permits; and (ii) provide evidence of:  (a) the Eligible Bidder's ability to satisfy the conditions set forth in clause (i) of this paragraph (including verification that the Eligible Bidder is not, and will not be as of the time of the transfer, "permit |

|  |  | blocked" under the federal Surface Mining Control and Reclamation Act by application of the federal Applicant Violator System), and (b) the Eligible Bidder's financial resources necessary to obtain assignment of or replace the reclamation surety bonds associated with such permits, which evidence may include a letter from a surety company confirming that the Eligible Bidder is a "qualified buyer" (as such term is used in the surety industry). |
| l. | As-Is, Where-Is | Each Bid must include a written acknowledgement and representation that the Eligible Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction. |
| m. | Honoring the Bid Procedures | Each Bid must affirmatively state agreement, and by submitting its Bid, each Eligible Bidder is so agreeing, to abide by and honor the terms of the Bidding Procedures (including if such Bid is declared the Winning Bidder or Backup Bidder (as defined below)) and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction.  The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets reflected in such Bid. |
| n. | Additional Diligence | Each Eligible Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding the Bid. |
| o. | Expenses | Each Bid, except for a potential Stalking Horse Bid (as defined above), shall not contemplate or request (and no Eligible Bidder that is not a Stalking Horse Bidder shall receive) any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement, and by submitting its Bid, each Eligible Bidder is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code. |
| **vi.** | **Information to be Provided to the Ad Hoc Group and Consultation Parties** | |
| Promptly upon any party executing a Confidentiality Agreement, but in any event no later than three business days, the Debtors will notify the counsel to the Ad Hoc Group of such occurrence.  Promptly upon any party submitting an Indication of Interest, but in any event no later than three business days, the Debtors will notify the Consultation Parties of such occurrence.  Promptly upon receiving each Bid, but in no event later than one business day following the Bid Deadline, the Debtors will provide a copy of each Bid to the Consultation Parties, *provided* that any confidential information shall only be shared with the Consultation Parties on a professional-eyes'-only basis. | | |

US 6228456

| vii. | Designation of Qualified Bidders |
|---|---|
| **a.  Qualified Bidder** | A Bid will be considered a "***Qualified Bid***," and each Eligible Bidder that submits a Qualified Bid will be considered a "***Qualified Bidder***," if the Debtors determine in their reasonable business judgment, in consultation with the Consultation Parties, that such Bid:  (i) satisfies the Bid Requirements; and (ii) is reasonably likely (based on availability of financing, antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid, within a time-frame reasonably acceptable to the Debtors, in consultation with the Consultation Parties.  Notwithstanding anything to the contrary herein or in the Bidding Procedures, any timely Bid:  (x) submitted by or on behalf of the Ad Hoc Group shall be considered a Qualified Bid, and any such bidder shall be considered a Qualified Bidder, and (y) that contemplates the consummation of a proposed Sale through a plan of reorganization will be deemed a Qualified Bid, and any such bidder shall be considered a Qualified Bidder, if it otherwise complies with the requirements set forth herein. |
| **b.  Notification** | Within two business days after the Bid Deadline, the Debtors will notify each Eligible Bidder whether such party is a Qualified Bidder. |
| **c.  Bid Modifications** | Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction:  (i) the Debtors, in consultation with the Consultation Parties, may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder; and (ii) a Qualified Bidder may not, without the prior written consent of the Debtors (which shall consult with the with the Consultation Parties before granting such consent), modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of, the Qualified Bid, *provided* that any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bidding Procedures. |
| **d.  Combination of Bids; Overlapping Bids** | Notwithstanding anything to the contrary herein or in the Bidding Procedures, the Debtors reserve the right, in consultation with the Consultation Parties, to work with:  (i) Eligible Bidders and Qualified Bidders to aggregate two or more Indications of Interest or Bids into a single consolidated Bid prior to the Bid Deadline; (ii) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction; and (iii) any Eligible Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.  The Debtors, in consultation with the Consultation Parties, may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, the Bids would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction). |

US 6228456

| viii. | Bid Selection and Criterion |
|---|---|
| **a.  Baseline Bid** | No later than one business day before the Auction, the Debtors will notify all Qualified Bidders of: (i) the highest or otherwise best Qualified Bid with respect to all or substantially all of the Debtors' Assets ("**All Assets**"); or (ii) if, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, separating the Assets into more than one potential sale is in the best interest of their estates, the highest or otherwise best Qualified Bid with respect to each such delineation of assets (each, an "**Asset Package**"). Each such highest or otherwise best Qualified Bid, which Qualified Bid may be a Stalking Horse Bid, shall be the "**Baseline Bid**" and the Debtors shall provide copies of the documents supporting each Baseline Bid to all Qualified Bidders. |
| **b.  Bid Assessment Criteria** | The determination of which Qualified Bid constitutes the Baseline Bid and, ultimately, the Winning Bid shall take into account any factors the Debtors, in consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (i) the type and amount of Assets sought to be purchased; (ii) the amount and nature of the Purchase Price; (iii) the Qualified Bidder's ability to consummate a Sale and the timing thereof; (iv) the net economic effect of any changes to the value to be received by the Debtors' estates from the Qualified Bid; (v) the effect on the Debtors' ability to wind down their estates in accordance with applicable law; and (vi) the tax consequences of such Qualified Bid. |
| **c.  Credit Bids** | Any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates and the right under applicable non-bankruptcy law to credit bid claims secured by such liens shall have the right to credit bid any portion and up to the entire amount of their outstanding secured claims pursuant to section 363(k) of the Bankruptcy Code, *provided* that any credit bid by or on behalf of any party other than the DIP Lenders, shall contain a cash component sufficient to pay the principal amount outstanding plus unpaid interest and fees under the Debtors' proposed debtor-in-possession financing facility. For purposes of evaluating competing bids, every dollar of a credit bid shall be treated the same as a dollar from a cash bid, and a credit bid shall not be considered inferior to a comparable cash bid because it is a credit bid. The fact that a Bid is composed of a credit bid (whether in whole or in part) shall not be a factor considered by the Debtors in their determination of the highest or otherwise best Bid for such asset. |
| ix. | The Auction Procedure |
| **a.  Time and Place** | If the Debtors receive two or more Qualified Bids with respect to All Assets or the same or similar Asset Package, as applicable, then the Debtors will conduct the Auction to determine the Winning Bidder(s) (as defined below) with respect to such Assets. The Auction shall take place at 11:00 a.m. (prevailing Eastern Time) on June 26, 2019 at Centerview Partners LLC, 31 West 52nd Street, 22nd Floor, New York, New York, 10019, or such later date, time, and location, as selected by the Debtors, in consultation with the Consultation Parties. If the Debtors receive one Qualified Bid with respect to All Assets or the same or similar Asset Package, as applicable, then the Debtors, in consultation with the Consultation Parties, may select such Qualified Bid as the Winning Bid and notify all other Bidders promptly thereafter. |

| | | |
|---|---|---|
| **b.** | **Conducting the Auction** | The Debtors and their advisors shall direct and preside over the Auction, *provided* that the Debtors shall consult with the Consultation Parties during the Auction to the extent reasonably practicable.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s) and, if applicable, the Asset Packages. Any Bids made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid(s) shall be "***Overbids***" and must comply with the conditions set forth below and shall be made and received on an open basis, with all material terms of each Overbid fully disclosed to all other Qualified Bidders.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Winning Bid(s).  The Debtors may, in consultation with the Consultation Parties, *provided* that if the Ad Hoc Group is participating in the Auction as a Qualified Bidder then they shall not receive such consultation, (i) select, in their reasonable business judgment, pursuant to the Bidding Procedures, the highest or otherwise best Bid and the Winning Bidder(s) or Backup Bidder(s); and (ii) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in the Debtors' reasonable business judgment, is (x) inadequate, insufficient, or not the highest or best Bid, (y) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bidding Procedures, or (z) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders, or other parties in interest. |
| **c.** | **Eligibility** | Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with the Bidding Procedures; *provided* that such other limitations are (i) not inconsistent with the Bidding Procedures Order, any other order of the Bankruptcy Court, or the Bankruptcy Code, (ii) disclosed orally or in writing to all Qualified Bidders and (iii) determined by the Debtors, in consultation with the Consultation Parties, to further the goals of the Bidding Procedures. |
| **d.** | **Required Attendance** | Qualified Bidders participating in the Auction must appear in person at the Auction, or through a duly authorized representative. |
| **e.** | **Permitted Attendance** | The Auction will be conducted openly and all creditors and counsel or other professional advisors to the Consultation Parties may be permitted to attend, *provided* that the Debtors may, in their sole and exclusive discretion, establish a reasonable limit to the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or creditor at the Auction. |
| **f.** | **No Collusion; Good-Faith *Bona Fide* Offer** | Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that:  (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Sale if selected as the Winning Bidder. |
| **g.** | **Adjourning the Auction** | Notwithstanding anything to the contrary herein or in the Bidding Procedures, the Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things:  (i) facilitate discussions between the Debtors and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; (iii) alter or combine Asset Packages; and (iv) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate |

13

| | | the proposed Sale at the prevailing Overbid amount. |
|---|---|---|
| h. | **Closing the Auction** | The Auction shall continue until the Debtors select, in their reasonable business judgment, in consultation with the Consultation Parties, pursuant to the Bidding Procedures, the highest or otherwise best Qualified Bid for All Assets or each of the Asset Packages, as applicable. Such Qualified Bid shall be declared the "*Winning Bid*," and such Qualified Bidder, the "*Winning Bidder*," and at which point the Auction will be closed. The Debtors may also select, in their reasonable business judgment, in consultation with the Consultation Parties, pursuant to the Bidding Procedures, the next-highest or otherwise second-best Qualified Bid for All Assets or each Asset Package, as applicable, to be the "*Backup Bidder*." As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid, and, as applicable, cause such definitive documentation to be filed with the Court. The acceptance by the Debtors of the Winning Bid is conditioned upon approval by the Court of the Winning Bid. |

| **x.** | **Terms of Overbids (Local Bankr. R. 6004-1(c)(i)(C))** | |
|---|---|---|
| a. | **Minimum Initial Overbid** | Any initial Overbid to the Baseline Bid(s) shall be no less than the value of the Baseline Bid(s)'s Purchase Price of the Assets, plus $250,000 plus the amount of the Bid Protections, if any. |
| b. | **Minimum Overbid Increment** | Any subsequent Overbids shall be in increments of value equal to $250,000, as determined by the Debtors in an exercise of their reasonable business judgment. |
| c. | **Announcing Highest Bid** | After each Overbid, the Debtors shall announce the material terms of the Overbid, including value attributed to the Overbid. |

| **xi.** | **Backup Bidder (Local Bankr. R. 6004-1(c)(i)(E))** | |
|---|---|---|
| a. | **Designation of Backup Bidder** | If an Auction is conducted, then the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for All Assets or each Asset Package, as applicable, as determined by the Debtors in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, shall be required to serve as a backup bidder (the "*Backup Bidder*") until such time as the applicable Sale is consummated, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors. |
| b. | **Identity of Backup Bidder** | The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Winning Bidder. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time as the Sale is consummated. |
| c. | **Consummating a Sale with Backup Bidder** | If a Winning Bidder fails to consummate the approved Sale contemplated by its Winning Bid, then the Debtors may select the Backup Bidder as the Winning Bidder, and such Backup Bidder shall be deemed a Winning Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. |

| xii.          Return of Deposit. |
| --- |
| The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Winning Bidder and the Backup Bidder) within three business days after the Auction is closed, or as soon as is reasonably practicable thereafter.  Upon the return of the Deposits, the applicable Qualified Bidders shall receive any interest that will have accrued thereon. |
| The Deposit of the Winning Bidder shall be applied to the purchase price of such Sale at closing.  If a Winning Bidder (including a Backup Bidder which becomes a Winning Bidder) fails to consummate a proposed transaction because of a breach by such Winning Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Winning Bidder, which may be retained by the Debtors as liquidated damages, in addition to any rights, remedies, or causes of action that may be available to the Debtors.  If a Winning Bidder consummates a proposed transaction or fails to consummate a proposed transaction but the Debtors elect to not consummate the proposed transaction with the Backup Bidder, then the Backup Bidder's Deposit shall be returned within three business days thereof, or as soon as is reasonably practicable thereafter. |

| xiii.          Modification of Bidding Procedures. (Local Bankr. R. 6004-1(c)(i)(D)) |
| --- |
| The Debtors reserve their rights to modify the Bidding Procedures in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law and in consultation with the Consultation Parties, without further order from the Court, in any manner that will best promote the goals of the Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Sale, including, without limitation:  (a) extending or modifying any of the dates and deadlines set forth in the Bidding Procedures; (b) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (c) adjusting the applicable minimum Overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis; (d) adjourning or canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids, *provided* that the Debtors may not amend the Bidding Procedures to reduce or otherwise modify their obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court. |

| xiv.          Consent to Jurisdiction |
| --- |
| All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, or the construction and enforcement of the Bidding Procedures. |

14. Significantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value, do not impair the Debtors' ability to consider all Qualified Bid proposals, and preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

**B.      Proposed Sale Schedule**

15. To further ensure that the Debtors' proposed sales and marketing process maximizes value for the benefit of the Debtors' estates, the Debtors seek approval of the following key dates and deadlines, subject to modification in accordance with the Bidding Procedures:

US 6228456

a.  **Indication of Interest Deadline**.  5:00 p.m. (prevailing Eastern Time) on such date that is the later of (x) June 5, 2019 or (y) one calendar day after the date on which the Court enters the Bidding Procedures Order, is the deadline by which any party interested in a transaction shall submit a non-binding indication of interest.

b.  **Bid Deadline**.  June 21, 2019, at 5:00 p.m. (prevailing Eastern Time), is the deadline by which bids for the Assets (as well as the deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted.

c.  **Stalking Horse Bidder and Bid Protections**.  The Debtors may, at any time until two calendar days prior to the date of the Auction, select one or more parties to be a Stalking Horse Bidder with respect to some or all of the Debtors' Assets.

d.  **Auction**.  June 26, 2019, at 11:00 a.m. (prevailing Eastern Time) is the date and time that the Auction, if any, will be held at Centerview Partners LLC, 31 West 52nd Street, 22nd Floor, New York, New York, 10019, or such later date, time, and location, as selected by the Debtors.

e.  **Sale Objection Deadlines**.  June 27, 2019, at 11:00 a.m. (prevailing Eastern Time) is the deadline (the "***Sale Objection Deadline***") by which all objections to the Sale (including to any Winning Bids or any Assigned Contract Objection (other than the Supplemental Assigned Contract Objections which are subject to the Supplemental Assigned Contract Objection Deadline)) must be filed with the Court.

f.  **Sale Hearing**.  The hearing approving the Sale to the Winning Bidder(s) shall take place before the Court on June 28, 2019, at [•]:00 [•].m. (prevailing Eastern Time).

## Form and Manner of Notice

16.    Within five business days of the entry of the Bidding Procedures Order, the Debtors shall serve the Auction and Sale Notice upon:  (a) the Office of the United States Trustee for the District of Delaware; (b) the indenture trustee under the Debtors' Secured Notes; (c) Davis Polk & Wardwell, as counsel to the DIP Lenders and the ad hoc group of Prepetition Secured Noteholders; (d) the indenture trustee under the Debtors' Unsecured Notes; (e) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (f) those parties entitled to notice pursuant to Local Rule 9013-1(m); (g) those persons who have formally appeared in these

US 6228456

chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (h) the Securities and Exchange Commission; (i) the Internal Revenue Service; (j) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (k); all parties who have asserted a lien or security interest against any of the Assets; (l) all state attorneys' general in states where the Assets are located; and (m) municipalities in which the Assets are located.

17.    The Debtors submit that notice of this Motion coupled with service of the Auction and Sale Notice, as provided for herein (together the "***Notice***"), constitutes good and adequate notice of the Auction and Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  The Debtors propose that no other or further notice of the Auction and Sale shall be required and submit that the Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including the date, time, and place of the Auction (if one is held), the Bidding Procedures, and the dates and deadlines related thereto.  Accordingly, the Debtors request that the form and manner of the Auction and Sale Notice be approved and that the Court determine that no other or further notice of the Auction and Sale is required.

## Summary of the Assumption and Assignment Procedures

18.    The Debtors propose the Assumption and Assignment Procedures set forth below for notifying the counterparties to any executory contract or unexpired lease to which a Debtor is a party (the "***Contract Counterparties***") of proposed cure amounts in the event the Debtors decide to assume and assign such contracts or leases in connection with the Sale.

**A.    Notice of Assumption and Assignment**

19.    On or before June 10, 2019 (the "***Assumption and Assignment Service Date***"), the Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties, and shall include as **Exhibit III** to the Cure Notice a list (the "***Assigned***

17

***Contracts Schedule***") that specifies:  (a) each of the Debtors' executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale, including the name of the Contract Counterparty to each such contract; (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract (the "***Cure Costs***"); (c) any proposed adequate assurance of future performance (the "***Adequate Assurance***"); and (d) the deadline by which any Contract Counterparty to a potentially Assigned Contract may file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto.

20.    A Contract Counterparty listed on a Cure Notice may file an objection  (an "***Assigned Contract Objection***") only if such objection is to (a) the proposed assumption and assignment of the applicable Assigned Contract; (b) proposed Cure Costs; and/or (c) the Proposed Adequate Assurance (collectively, the  "***Assigned Contract Objection Basis***").  All Assigned Contract Objections must:  (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to (x) the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, or (y) the proposed Adequate Assurance, state the adequate assurance amount purportedly required, together with any applicable and appropriate documentation in support thereof, (clauses (i)-(iii), the "***Assigned Contract Objection Requirements***"); and (iv) be filed with the Court no later than the Sale Objection Deadline.

21.    If a Contract Counterparty files an Assigned Contract Objection and the Winning Bidder has designated that it wishes to take assignment of such Assigned Contract, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such

US 6228456

objection will be resolved at the Sale Hearing, but such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Winning Bidder's discretion.  If an Assigned Contract Objection is not satisfactorily resolved, the Winning Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Protection with respect to such contract.

**B.**     **Supplemental Cure Notice**

22.     If at any time:  (a) the Debtors discover contracts inadvertently omitted from the Assigned Contracts Schedule; (b) the Winning Bidder identifies other executory contracts or unexpired leases that it desires to assume and assign in connection with the Sale; or (c) any proposed Cure Cost or Adequate Assurance requires modification, then the Debtors may, at any time after the Assumption and Assignment Service Date but before the Sale Hearing: (x) supplement the Assigned Contracts Schedule with previously omitted Assigned Contracts; (y) remove any Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that the Winning Bidder proposes be assumed and assigned to it in connection with the Sale or add to such list; and/or (z) modify the proposed Cure Costs or Adequate Assurance.

23.     In the event that the Debtors exercise any of the rights reserved above, the Debtors shall promptly file with the court and serve on each affected Contract Counterparty a supplemental notice of assumption and assignment (a "***Supplemental Cure Notice***").  Each Supplemental Cure Notice shall include the same information with respect to listed Assigned Contracts as would have been included in the Notice of Assumption and Assignment (a "***Supplemental Assigned Contract Schedule***").

24.     A Contract Counterparty listed on a Supplemental Cure Notice may file an

19

objection (a "*Supplemental Assigned Contract Objection*") only if on an Assigned Contract Objection Basis.   All Supplemental Assigned Contract Objections must:   comply with the Assigned Contract Objection Requirements and be filed with the Court no later than the date that is the later of (x) the Sale Objection Deadline and (y) seven calendar days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice (the "*Supplemental Assigned Contract Objection Deadline*").

25.     If a Contract Counterparty files a Supplemental Assigned Contract Objection, and the Winning Bidder has designated that it wishes to take assignment of such Assigned Contract, and the parties are unable to consensually resolve the dispute, then, to the extent the Sale Hearing has occurred, the Debtors shall seek an expedited hearing before the Court (a "*Supplemental Assigned Contract Hearing*") to resolve the objection, but such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Supplemental Assigned Contract Objection, to be determined in the Winning Bidder's discretion.   If a Supplemental Assigned Contract Objection is not satisfactorily resolved, the Winning Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Winning Bidder will not be responsible for any Cure Costs or Adequate Protection with respect to such contract.

## C.     Additional Notice of Assumption and Assignment Procedures

26.     If a Contract Counterparty does not file an Assigned Contract Objection or Supplemental Assigned Contract Objection, and absent a subsequent order of the Court establishing an alternative Cure Cost:  (a) the Cure Costs and Adequate Assurance, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document; and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs and Adequate Assurance, if any, and will be forever

US 6228456

barred from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs and Adequate Assurance, if any, and from asserting any other claims related to such Assigned Contract against the Debtors or the Winning Bidder.

27.     The inclusion of an Assigned Contract on the Assigned Contract Schedule or Supplemental Assigned Contract Schedule, will not:  (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Winning Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease.  Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Winning Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Winning Bidder.

## BASIS FOR RELIEF REQUESTED

**A.      The Relief Sought in the Bidding Procedures Order Is in the Best Interests of the Debtors' Estates and Should be Approved.**

28.     Adoption of the Bidding Procedures is a valid exercise of the Debtors' business judgment.  Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from its estate.  *See*, *e.g.*, *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("In evaluating whether a sound business purpose justifies sale of property under Section 363, courts consider a variety of factors, which essentially represent a 'business judgment' test."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  This standard prohibits other parties from second-guessing the debtor's business judgment if the debtor has shown that the proposed use will benefit the debtor's estate.  *See In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable

US 6228456

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near Herculean task.").

29.    The paramount goal in any sale of property of a debtor's estate is to maximize the proceeds realized by the estate.  *See In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3rd Cir. 2004) (debtor "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics Corp., v. Chinery*, 330 F.3d 548, 573 (3rd Cir. 2003) (same); *In re Adams Res. Expl. Corp.*, No. 17-10866 (KG), at 12 (Bankr. D. Del. 2017) ("The relief requested in the Sale Motion . . . is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate, and its creditors."); *Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 765 (7th Cir. 2004) (in a bankruptcy sale, the "governing principle . . . is to secure the highest price for the benefit of the estate and creditors").  Accordingly, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value realized by the estate and therefore are appropriate in the context of bankruptcy transactions. *See*, *e.g.*, *In re Energy Future Holdings Corp.*, 593 B.R. 217, 246 (Bankr. D. Del. 2018) (recognizing the appropriateness of a debtors' bidding procedures where the "objective at all times was to maximize value for their estates, consistent with their fiduciary duties"); *In re Verasun Energy Corp., No. 08-12606* (BLS), 2009 WL 7215671, at *2 (Bankr. D. Del. Feb. 19, 2009); *In re Dura Auto. Sys., Inc.,* No. 06-11202 (KJC), 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007); *In re Integrated Res., Inc.*, 147 B.R. 650, 656–57 (Bankr. S.D.N.Y. 1992) (bidding procedures "encourage bidding and . . . maximize the value to the debtor's assets").

30.     The Debtors believe that the proposed Bidding Procedures will encourage prospective bidders to put forward their best bids quickly in order to generate the highest or best recoveries for the Debtors' stakeholders and also provide for substantial flexibility with respect to the structure of any Sale.

31.     For these reasons, the Debtors request that the Court authorize the Debtors' adoption of the Bidding Procedures as a valid exercise of the Debtors' business judgment.

**B.      The Bid Protections will Maximize the Value of the Debtors' Assets and Should be Approved.**

32.     To the extent that the Debtors enter into a Stalking Horse Agreement with a Stalking Horse Bidder, the Debtors also seek authority to provide Bid Protections to a Stalking Horse Bidder in an aggregate amount not to exceed three percent of any proposed Purchase Price for an applicable Sale.

33.     Courts in this circuit have held that bid protections must provide an actual benefit to a debtor's estate and be necessary to preserve the value of estate assets.  *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999) (noting that bid protections must be of "actual benefit to the estate and that such costs and expenses [be] necessary to preserve the value of the estate assets."); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("Under *O'Brien*, we must decide whether an award of a break-up fee was necessary to preserve the value of the Debtors' estate."); *In re Dura Auto. Sys., Inc., No. 06-11202 KJC*, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007) ("Bidding procedures should be approved when they provide a benefit to the estate by maximizing the value of the assets").  Under the *O'Brien* standard, bid protections may benefit the estate (i) if they "promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited," or (ii) where the availability of bid protections induce a bidder to

23

research the value of a debtor and submit a bid that serves as a minimum or floor bid on which other bidders can rely. *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 537. Further, a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *In re Integrated Res., Inc.*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that bidding procedures are subject to the "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

34. The Debtors believe that authority to pay Expense Reimbursement and a Breakup Fee to a Stalking Horse Bidder is in the best interests of their estates by, among other things, establishing a floor for further bidding that may increase the consideration given in exchange for the Assets. *See Integrated Resources,* 147 B.R. at 659-60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's."). A Stalking Horse Bidder will expend time and resources negotiating, drafting, and performing due diligence activities necessitated by the Bidding Procedures, despite the fact that the bids will be subject to Court approval and overbidding by other interested parties. Without the Bid Protections, the Debtors may not be able to attract a Stalking Horse Bidder, which may impede the Debtors' ability to maximize the value of the Sale for the benefit of their estates.

35. Importantly, the Debtors seek to utilize the authority to provide Bid Protections only if, in their business judgment, such Bid Protections will promote the competitiveness of the bidding process, thereby maximizing the value of the Assets for the benefit of their stakeholders. Further, the Debtors only seek authority to provide Bid Protections, in an amount not to exceed, in the aggregate, three percent of the proposed purchase price of the Sale. In such instance, the value created for the Debtors' estates will likely greatly outweigh the cost of any Bid Procedures.

36. Similar types of bid protections have been approved in this jurisdiction. *See*, *e.g*.,

*In re Z Gallerie, LLC, et al.*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 11, 2019) (authorizing stalking horse breakup fee and expense reimbursement); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 21, 2019) (same); *In re Enduro Resource Partners LLC, et al.*, No. 18-11174 (KG) (Bankr. D. Del. June 11, 2018) (same); *In re Emerald Oil, Inc. et al.*, No. 16-10704 (KG) (Bankr. D. Del. Aug. 31, 2016) (same); *In re Samson Resources Corp., et al.*, No. 15-11934 (CSS) (Bankr. D. Del. Sept. 30, 2016) (same); *In re Haggen Holdings, LLC*, No. 15-11874 (KG) (Bankr. D. Del. Oct. 19, 2015) (same).

37.   Accordingly, for the reasons set forth above, the Court should grant the Debtors the authority to incur and pay the Bid Protections in their discretion as a valid exercise of the Debtors' business judgment.

**C.   The Form and Manner of the Notice Should be Approved.**

38.   Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 calendar days' notice of a hearing where the Debtors will seek to use, lease, or sell property of the estate outside the ordinary course of business.  Fed. R. Bankr. P. 2002(a). Bankruptcy Rule 2002(c) requires any such notice to include the time and place of the auction and the hearing and the deadline for filing any objections to the relief requested therein.  Fed. R. Bankr. P. 2002(c).

39.   The Debtors submit that the Notice constitutes good and adequate notice of the Auction and Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the Notice of the Auction and Sale.

US 6228456

**D.      The Assumption and Assignment Procedures Should be Approved.**

40.     To facilitate and effectuate the Sale, the Debtors are seeking approval of the Assumption and Assignment Procedures.   The Assumption and Assignment Procedures are reasonable and necessary to properly notify parties of potential assumptions and/or assignments and provide the contract and lease counterparties with sufficient time to determine the accuracy of the proposed cure amount and whether the Debtors have provided adequate assurance of future performance.

41.     The Debtors will demonstrate at the Sale Hearing that the requirements for assumption and assignment of the Assigned Contracts to the Winning Bidder will be satisfied. As required by the Bidding Procedures, the Debtors will evaluate the financial wherewithal of potential bidders before designating such party a Qualified Bidder or Winning Bidder.  Further, the Assumption and Assignment Procedures provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of the Winning Bidder to provide adequate assurance of future performance and object to the assumption of the Assigned Contracts or proposed cure amounts.   The Court therefore will have a sufficient basis to authorize the Debtors to reject or assume and assign the Assigned Contracts.

42.     Accordingly, the Debtors submit that the Assumption and Assignment Procedures should be approved as reasonable and necessary measures to adequately notify parties in interest and conduct the proposed sale process in a fair, efficient, and proper manner.

**E.      The Proposed Sale Satisfies the Requirements of section 363(f) of the Bankruptcy.**

43.     In the interest of attracting the best and highest offers, the Assets should be sold free and clear of any and all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances attaching to the proceeds of the Sale.  Section 363(f) of the Bankruptcy Code authorizes a debtor

US 6228456

to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

    i.    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

    ii.    such entity consents;

    iii.    such interest is a lien at the price at which such property is to be sold is greater than the value of all liens on such property;

    iv.    such interest is in bona fide dispute; or

    v.    such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see In re Elliot*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (because section 363(f) is written in the disjunctive, a court may approve a "free and clear" sale even if only one of the subsections is met).

44.    Section 363(f) is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); *see In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

45.    The Debtors submit that the Sale will satisfy the requirements of section 363(f) of the Bankruptcy Code. To the extent a party objects to Sale on the basis that it does hold a lien or encumbrance on the Assets, the Debtors believe that any such party could be compelled to accept a monetary satisfaction of such claims or that such lien is in *bona fide* dispute. In addition, to the extent the Debtors discover any party may hold a lien on all, or a portion of, the Assets, the

27

Debtors will provide such party with notice of, and an opportunity to object to, the Sale.  Absent objection, each such party will be deemed to have consented to the sale of the Assets.

46.    Accordingly, the Debtors believe that the Sale (i) will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and (ii) should be approved free and clear of all liens, claims, interests and encumbrances.

**F.    A Successful Bidder Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

47.    Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See e.g.,  In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp., No. 03-51524*, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *Abbotts Dairies of Pa.*, 788 F.2d 143, 147 (3d Cir. 1986).

48.    Any agreement consummating a Sale will be negotiated at arm's-length by sophisticated parties, each represented by their own advisors.  Accordingly, the Debtors request that the Sale Order include a provision that the Winning Bidder for the Assets is a "good faith" purchaser within the meaning of Bankruptcy Code section 363(m).  The Debtors believe that providing any Winning Bidder with such protection will ensure that the maximum price will be received by the Debtors for the Assets and closing of the same will occur promptly.

**G.    Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized.**

49.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."    11 U.S.C.  § 365(a).    Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease. *See, e.g., In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del.

28

2003) (finding that debtor's decision to assume or reject an executory contract is governed by a business judgment standard and may only be overturned if the decision is a product of bad faith, whim, or caprice); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court").  The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

50.     The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate." *In re Wheeling-Pittsburgh Steel Corp*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).  Any more exacting scrutiny would slow the administration of the debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.  Prior to assuming an executory contract, however, Bankruptcy Code section 365(b)(1) requires that any outstanding defaults under the contracts to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured.

51.     The Debtors respectfully submit that, prior to any assumption of an Assigned Contract, the Debtors and/or a Winning Bidder will cure any amounts necessary to assume the Assigned Contract.  Indeed, as required by the Bankruptcy Code, the Debtors' assumption and assignment of the Assigned Contracts will be contingent upon payment or reserve of Cure Costs in connection with the Sale.

52.     Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract.  *See In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir.

US 6228456

2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate.").  Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2).

53.    To the extent necessary, the Debtors will present facts at the Sale Hearing to show the financial credibility, willingness and ability of the Winning Bidder to perform under the Assigned Contracts.  The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Winning Bidder to provide adequate assurance of future performance under the Assigned Contracts, as required under Bankruptcy Code section 365(b)(1)(C).  Further, as set forth above, the Debtors will give notice to all parties to the Assigned Contracts, which notice will include the amounts the Debtors believe are necessary to cure any defaults in accordance with section 365(b) of the Bankruptcy Code.

54.    Accordingly, the Debtors request approval under Bankruptcy Code section 365 of the Debtors' assumption and assignment of the Assigned Contracts in connection with the Sale. The Debtors further request that the Sale Order provide that the Assigned Contracts will be transferred to, and remain in full force and effect for the benefit of, the Winning Bidder notwithstanding any provisions in the Assigned Contracts, including those described in Bankruptcy Code sections 365(b)(2) and (f)(1) and (f)(3) that prohibit such assignment.

## RESERVATION OF RIGHTS

55.    For the avoidance of doubt, nothing in this Motion is intended to be, nor should it be construed as (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined

US 6228456

in the Motion or any proposed order, or (e) a waiver of the Debtors' or any other party in interest's rights.  In addition, nothing in this Motion or the relief requested herein should be interpreted as the assumption or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code.

## **WAIVER OF LOCAL RULES 9006-1(c)(ii) AND 9029-3(a)(i)**

56.     The Debtors' precipitous financial condition necessitated that the Debtors seek approval of debtor-in-possession financing from the Ad Hoc Group to provide the necessary liquidity to fund these chapter 11 cases and the sale process on an accelerated basis.  This proposed debtor-in-possession financing, however, only provides a limited liquidity runway. Accordingly, it is crucial that the Sale is approved as expeditiously as possible following the Auction, particularly given the importance of maximizing the time between the Sale Hearing and the closing of the Sales.

57.     This financial exigency necessitates that the Debtors' proposed sale process timeline set June 27, 2019—one day after the Auction and  one day prior to the Sale Hearing—as the deadline by which all objections to the Sale must be filed with the Court.

58.     Accordingly, the Debtors believe that it is in the best interest of their estates and creditors for this Court to waive the requirements of Local Rule 9006-1(c)(ii)[4] and 9029-3(a)(i)[5] and to approve the proposed Sale Objection Deadline and submit that the Court should waive the requirements of Local Rules 9006-1(c)(ii) and 9029-3(a)(i).

---

[4]     Local Rule 9006-1(c)(ii) provides that "the deadline for objection(s) [to a motion] shall be no later than seven (7) days before the hearing date." Del. Bankr. L.R. 9006-1(c)(ii).  However, the objection deadline may be extended by agreement of the movant provided that "no objection deadline may extend beyond the deadline for filing the agenda." *Id.*

[5]     Under the Local Rules, the deadline for filing the agenda is "on or before 12:00 p.m. prevailing Eastern Time two (2) business days before the date of the hearing."  Del. Bankr. L.R. 9029-3(a)(i).

US 6228456

## WAIVER OF RULES 6004(h) AND 6006(d)

59.     The Debtors request that, upon entry of the Bidding Procedures Order, the Court waive the fourteen-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

60.     Notice of this Motion has been provided by delivery to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the indenture trustee under the Debtors' Secured Notes; (c) Davis Polk & Wardwell, as counsel to the DIP Lenders and the ad hoc group of Prepetition Secured Noteholders; (d) the indenture trustee under the Debtors' Unsecured Notes; (e) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (f) those parties entitled to notice pursuant to Local Rule 9013-1(m); (g) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; (h) the Securities and Exchange Commission; (i) the Internal Revenue Service; (j) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; (k); all parties who have asserted a lien or security interest against any of the Assets; (l) all state attorneys' general in states where the Assets are located; and (m) municipalities in which the Assets are located.  In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

61.     No prior motion for the relief requested herein has been made to this Court or any other court.

32

The Debtors respectfully request that the Court enter the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A** and grant them such other and further relief to which the Debtors may be justly entitled.

Dated: May 13, 2019
Wilmington, Delaware

/s/ *John H. Knight*
**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
John H. Knight (No. 3848)
David T. Queroli (No. 6318)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Tel:  302.651.7700
Fax: 302.651.7701
defranceschi@rlf.com; knight@rlf.com;
queroli@rlf.com

- and -

**VINSON & ELKINS LLP**
David S. Meyer (*pro hac vice* admission pending)
Jessica C. Peet (*pro hac vice* admission pending)
Lauren R. Kanzer (*pro hac vice* admission pending)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Tel:  212.237.0000
Fax: 212.237.0100
dmeyer@velaw.com; jpeet@velaw.com;
lkanzer@velaw.com

- and -

Paul E. Heath (*pro hac vice* admission pending)
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.220.7716
pheath@velaw.com

*Proposed Attorneys for the Debtors and Debtors in Possession*

US 6228456