IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re*: <br><br> CLOUD PEAK ENERGY INC., *et al.,* <br><br> Debtors. | Chapter 11 <br><br> Case No. 19-11047 (KG) <br><br> (Jointly Administered) <br><br> **Objection Deadline: November 27, 2019 at 5:00 p.m.** <br> **Hearing Date: December 5, 2019 at 9:30 a.m.** |

## OBJECTION OF THE SECURITIES AND EXCHANGE COMMISSION TO CONFIRMATION OF THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF CLOUD PEAK ENERGY INC. AND CERTAIN OF ITS DEBTOR AFFILIATES

The United States Securities and Exchange Commission ("Commission"), a statutory party to these proceedings[1] and the federal agency responsible for regulating and enforcing compliance with the federal securities laws, objects to confirmation of the First Amended Joint Chapter 11 Plan ("Plan") of Cloud Peak Energy Inc. ("Cloud Peak") and Certain of Its Debtor Affiliates (collectively, the "Debtors"), filed October 14, 2019. In support of its objection, the Commission respectfully states as follows:

### INTRODUCTION

The Commission objects to confirmation of the Plan because it would release the liability of, and permanently enjoin actions against, non-debtor third parties in contravention of Section 524(e) of 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").

---

[1] As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue[.]" 11 U.S.C. § 1109(a).

1

As a general matter, nondebtor third party releases contravene Section 524(e) of the Bankruptcy Code, which provides that only debts of the debtor are affected by Chapter 11 discharge provisions.  Such releases have special significance for public investors, such as Cloud Peak's Class 7 public shareholders and Class 3 and Class 4 noteholders, because they may enable nondebtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, including violations of the federal securities laws or breaches of fiduciary duty under state law.

While such releases may be allowed if parties expressly consent to them in exchange for consideration from each released party, those circumstances are not present here.  Nor are there exceptional circumstances that would support non-consensual releases.  The Commission has similar concerns regarding an exculpation clause in the Plan that provides that the exculpated parties shall have no liability for any acts or omissions taken in connection with the restructuring, including certain prepetition conduct, but excluding actual fraud, gross negligence, or willful misconduct.

Thus, the release and exculpation provisions should be deleted from the Plan or the Plan should be amended to provide: (i) that class 7 shareholders, class 3 2021 Notes Secured Claims ("Secured Notes"), and class 4 Unsecured Notes Claims ("Unsecured Notes") either be carved out of the release or be required to "opt in" to the release rather than having to affirmatively "opt out" of the release; and (ii) that the exculpation clause will be narrowly tailored to cover only estate fiduciaries and to exclude prepetition conduct.

## BACKGROUND

Cloud Peak is a publicly held company that was formerly listed on the New York Stock Exchange (the "NYSE") under the symbol "CLD."  Since March 27, 2019, Cloud

Peak has been trading on the OTC Pink under the symbol "CLDP." As of the Petition Date, Cloud Peak had 76,507,272 outstanding shares of common stock, $290.4 million in Secured Notes, and $56.4 million in Unsecured Notes. Disc. St. at 14 & 16.

As discussed above, the Plan contains provisions (the "Releases") that seek to release and permanently enjoin actions against non-debtor third parties in a manner that we believe contravenes Section 524(e) of the Bankruptcy Code and applicable law. The Releases will affect the Debtors' public shareholders and noteholders. Under the Plan, the shareholders are receiving no distribution and they are not entitled to vote on the Plan, but they are nonetheless deemed to consent to the Releases unless they affirmatively opt out. The Debtors' Secured Noteholders are receiving a recovery of approximately 45%, and the Debtors' Unsecured Noteholders are receiving a recovery of approximately 1-2%. Disc. St. at 4-5. The Secured and Unsecured Noteholders are entitled to vote on the Plan, and they are deemed to consent to the Releases if they: (i) vote in favor of the Plan; (ii) abstain from voting and do not affirmatively opt out of the Releases; or (iii) vote to reject the Plan, and do not affirmatively opt out of the Releases.

The Releases apply to claims against: (a) the Debtors and each Debtor's respective directors, officers, and managers as of the Petition Date and at any time thereafter through the Effective Date; (b) debtor-in-possession financing lenders; (c) the debtor-in-possession financing agent; (d) the consenting noteholders; (e) the committee and the members thereof; (f) the general unsecured claims administrator; (g) the prepetition 2021 notes indenture trustee; (h) the prepetition Unsecured Notes indenture trustee; and (i) with respect to each of the foregoing parties under (a) through (h), such entity and its associated entities. The Releases are for any and all claims and causes of

action and a wide range of other obligations, but exclude claims arising from gross negligence, fraud, or willful misconduct. The released parties are not providing any specific consideration in exchange for the Releases.

## DISCUSSION

### I. The Release is not consensual and does not satisfy the standard to be approved as a nonconsensual release.

A. <u>The Release is Not Consensual</u>.

Section 524(e) of the Bankruptcy Code addresses the scope of a bankruptcy discharge and states, in relevant part, that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Bankruptcy Code contemplates that a discharge only affects the debts of those submitting to its burdens. *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 211 (3d Cir. 2000). Nonetheless, courts in this District have held that third party releases of non-debtors may be allowed if they are consensual. *See In re Washington Mutual, Inc*., 442 B.R. 314, 352 (Bankr. D. Del. 2011); *In re Zenith Electronics Corp*., 241 B.R. 92, 111 (Bankr. D. Del. 1999); *see also In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) (court held that debtors must give creditors and interest holders an opportunity to individually consent to the release, apart from voting on the plan).

In the Commission's view, releases should be considered to be consensual only if the affected parties provide affirmative consent. Here, by contrast, shareholders and Noteholders are bound unless they affirmatively opt out of the Release. Bankruptcy courts in this Circuit have generally held that an opt-out mechanism is not sufficient to support a third party release, particularly with respect to those who do not return a ballot.

*See Washington Mutual*, 442 B.R. at 355 ("[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release"); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (court found nondebtor releases consensual and binding only on creditors and interest holders voting to accept the plan); *cf. In re Spansion, Inc.*, 426 B.R. 114, 144-45 (Bankr. D. Del. 2010) (court found releases consensual only with respect to parties voting to accept the Plan, and unimpaired creditors deemed to have accepted the Plan). Thus, simply abstaining from voting or voting to reject a plan but failing to opt out of the releases does not constitute "consent." *But see In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (in nonpublic company case, nondebtor releases deemed consensual with respect to both impaired creditors who abstained from voting on the Plan, and those who voted to reject the plan and did not otherwise opt out of the releases). Moreover, the Commission is not aware of *any* published precedent for requiring a class, such as the Class 7 shareholder class, that is receiving no consideration and is deemed reject the Plan to affirmatively opt out of a third party release.

Here, the Plan deems the consent of shareholders and Noteholders to the Releases to be established by silence or failure to opt out. This is inconsistent with basic contract principles. *In re SunEdison, lnc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third party release.") *citing In re Washington Mutual, Inc.*, 442 B.R. at 352. The Restatement of Contracts makes clear that silence or failure to act cannot be deemed consent under the facts of this case.

Under the Restatement, silence can be deemed to be acceptance only:

(1)

> (a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation.
>
> (b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
>
> (c) Where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept.

> (2) An offeree who does any act inconsistent with the offeror's ownership of offered property is bound in accordance with the offered terms unless they are manifestly unreasonable. But if the act is wrongful as against the offeror it is an acceptance only if ratified by him.

Restatement (Second) of Contracts, § 69; *see also Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 433 n.3 (D. Del. 2012) ("Merely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting.").

None of the situations enumerated in the Restatement apply here. The Debtors cannot rely on the silence of the shareholders (who are not even entitled to vote on the Plan), nor the silence of the Noteholders, as a manifestation of their acceptance of the Releases. Indeed, there can be no contractual consent by silence because the Debtors are not offering anything of benefit to the shareholders. Although Noteholders are receiving a recovery, they are not being offered anything of benefit specifically in exchange for the Releases. Accordingly, the Debtors are merely extinguishing a right the shareholders and Noteholders may have against non-debtor third parties unless they affirmatively object by submitting an opt-out form. Interpreting silence as consent is particularly egregious where public investors are involved and the stock continues to trade, because proper

notice depends both on the Debtors and on various broker-dealer intermediaries, who must deliver the appropriate forms and instructions to the relevant shareholders.[2]

    B. The Releases do not satisfy the standard to be approved as nonconsensual because they are not: (i) fair to the releasing parties; (ii) necessary to the reorganization; and (iii) supported by the facts of this case.

The Third Circuit has held that allowing nonconsensual non-debtor releases is an "extraordinary remedy" that should be used only sparingly. *See In re Continental Airlines*, 203 F.3d at 212. In order to bind all of the affected parties without their consent, the Debtors would need to show that the impacted classes received fair consideration and that the Releases are necessary to the Debtors' reorganization. *See id.* at 215;[3] *In re Spansion, Inc.*, 426 B.R. at 144-145. In particular, the Third Circuit in *Continental* focused on whether the releases were given in exchange for reasonable

---

[2] Cloud Peak shares continue to trade and, as a result, a person who purchases shares after the notice of non-voting status was distributed would not automatically receive that notice from the Debtor. He or she would have no notice of the opt out provision and therefore would likely be bound with no realistic opportunity to opt of the Releases , which apply to conduct up to the Effective Date of the Plan.

[3] In *Continental Airlines*, the Third Circuit rejected a plan provision that released and permanently enjoined shareholder lawsuits against present and former officers and directors who were not in bankruptcy. The court held that the release and injunctive provisions fell squarely into the Section 524(e) prohibition because they amounted to nothing more than a lockstep discharge of nondebtor liability. The Court held open the possibility that "there are circumstances under which [it] might validate a nonconsensual release that is both necessary and given in exchange for fair consideration," *Id*. at 214, n.11, but made this comment in light of releases and permanent injunctions issued in such extraordinary cases as *Robins*, *Manville*, and *Drexel*; *See Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir. 1989); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89 (2d Cir.1988); *Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285 (2d Cir. 1992); *see also Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 143 (2d. Cir. 2005) (the Second Circuit held a "nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan. . . .").

financial consideration, separate and apart from the consideration to which the class was entitled as creditors under the Plan. *In re Continental Airlines*, 203 F.3d at 215. Courts in Delaware consider a number of factors, including whether: "(i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release." *In re Spansion, Inc.*, 426 B.R. at 144-145.

When applying the *Continental* factors to the facts of this case, it is clear that the Releases contravene Bankruptcy Code Section 524(e) and applicable Third Circuit law. There is no evidence that fair consideration was provided specifically in exchange for the release of claims against nondebtors or that all of the nondebtor released parties made contributions to the Plan. Indeed, "Released Parties" include not just the enumerated parties, but also those parties' "Associated Entities," which is defined broadly to include many persons and entities who may not have contributed anything to the Plan or restructuring. There has not been an adequate showing that all of these Released Parties have provided a critical financial contribution, or that the Releases are fair to shareholders and Noteholders. Based on the above, it is the Commission's position that the shareholders and Noteholders should be carved out from the Releases entirely, or that they should only be bound by the Releases if they opt in to the Releases.

In addition, in the Commission's view, the exculpation clause in the Plan constitutes an impermissible non-debtor release and discharge since it limits the liability of various entities that may not be estate fiduciaries for conduct that occurred prior to the

Chapter 11 case, and hence falls squarely within the scope of Section 524(e). Although actual fraud, willful misconduct, and gross negligence are carved out, the exculpation provision could still potentially release various non-scienter-based claims. *See Washington Mutual*, 442 B.R. at 350, *citing In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000)* (exculpations are limited to actions by estate fiduciaries in the bankruptcy case).

## CONCLUSION

For all of the foregoing reasons, the Commission requests that the Releases and exculpation provisions be deleted from the Plan, or the Plan should be amended to provide: (i) that the shareholders and Noteholders either be carved out of the Releases or be required to opt in to the Releases in order to be bound; and (ii) that the exculpation clause will be narrowly tailored to cover only estate fiduciaries and to exclude prepetition conduct.

Dated: November 26, 2019
New York, NY

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

By:/s/ Neal Jacobson
Neal Jacobson
Brookfield Place
200 Vesey St., Suite 400
New York, NY 10281
(212) 336-0095
Jacobsonn@sec.gov

Of Counsel: Alistaire Bambach
Morgan Bradylyons

9